UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-00187-MR

| LIONELL MARBURY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| TERESA WILLOUGHBY, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, [Doc. 57], and Plaintiff's Motion for Entry of Default, [Doc. 62].

**I. PROCEDURAL BACKGROUND**

Pro se Plaintiff Lionell Marbury ("Plaintiff") is North Carolina inmate currently incarcerated at Craven Correctional Institution in Vanceboro, North Carolina. Plaintiff filed this action on April 15, 2019, pursuant to 42 U.S.C. § 1983, naming Teresa Willoughby, identified as a Lieutenant at Brown Creek Correctional Institution ("Brown Creek"); Jamillah Myers, identified as a Sergeant at Brown Creek; Jack Cleloand, identified as the Brown Creek Assistant Superintendent; and FNU Teater, identified as a Brown Creek Nurse, as Defendants in this matter. [Doc. 1 at 2-3]. Plaintiff sued

Defendants in their individual and official capacities. [Id.]. Plaintiff claims that Defendants violated Plaintiff's rights under the Eighth Amendment through their deliberate indifference to Plaintiff's serious medical needs while Plaintiff was housed at Brown Creek. [Doc. 1 at 3-5]. Specifically, Plaintiff alleged that he dislocated his right knee on April 18, 2016 and was "mistreated" and his "civil rights abused during the months of April, May, and June" by Defendants compelling him to work as a bathroom janitor despite his injury and being on crutches. [Doc. 1 at 4-5]. Plaintiff alleged that Defendants Willoughby and Myers threatened to write him up if he quit his prison job. Plaintiff alleged that Defendant Teater denied him crutches at first until a correctional officer assisted Plaintiff in getting them. [Id. at 5]. Plaintiff further alleged that after he was transferred from Brown Creek to Bertie Correctional Center ("Bertie") he received better medical care, including an MRI that indicated he needed surgery to repair his knee. [Id.]. For relief, Plaintiff seeks monetary damages and undefined injunctive relief. [Id.].

The Court allowed Plaintiff's claims against Defendants Willoughby, Myers, and Teater to proceed on initial review and dismissed Defendant Cleoand for the reasons stated in the Court's Order. [Doc. 15]. Thereafter, Plaintiff moved to amend his complaint, which the Court allowed. [Docs. 34,

35]. In his Amended Complaint, Plaintiff omitted his claim against Defendant Teater and the Court dismissed her has a Defendant.[1] [Docs. 35, 36]. This matter, therefore, proceeded against Defendants Willoughby and Myers only. The Court appointed the North Carolina Prisoner Legal Services (NCPLS) to represent Plaintiff for the purpose of conducting discovery only. [Doc. 31 at 2]. After discovery was complete, Plaintiff's counsel moved to withdraw as counsel, advising the Court that he had provided Plaintiff with hard copies of relevant documents in the case.[2] [Docs. 53]. The Court granted the motion to withdraw. [Doc. 54]. No discovery motions were filed by either party.

Defendants moved for summary judgment. [Doc. 57]. In support of their motion, Defendants submitted a memorandum, their own affidavits, Plaintiff's Offender Information Sheet, Plaintiff's relevant medical record, and Plaintiff's External Movement Log. [Docs. 58, 58-1 through 58-6].

---

[1] Neither of Plaintiff's complaints were submitted under penalty of perjury. [See Docs. 1, 36].

[2] On November 20, 2020, Plaintiff's attorney filed the required notice advising the Court that discovery had been completed. [Doc. 48]. Two days later Plaintiff's attorney withdrew that notice after realizing that certain documents produced by Defendants were not responsive to Plaintiff's discovery request. Namely, Plaintiff requested unit and shift narratives from Brown Creek, which became a part of Lanesboro Correctional Institution later in 2016. Defendants inadvertently produced shift narratives from Lanesboro, which has since been converted to a women's prison and is now called Anson Correctional Institution. [Doc. 49 at 2]. On December 14, 2020, Plaintiff's discovery counsel filed a second notice advising the Court that discovery was complete, after Defendants supplemented their previous discovery responses. [Doc. 52; see Doc. 53 at 2].

3

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Doc. 59]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulation (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a)]. The Court further advised that, "[i]f Plaintiff has any evidence to offer to show that there is a genuine issue for trial," "he must now present it to this Court in a form which would otherwise be admissible at trial, i.e., in the form of affidavits or unsworn declarations."

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 2-3 (citing Fed. R. Civ. P. 56(c)(4))]. Plaintiff timely responded to Defendants' summary judgment motion. [Docs. 60, 61]. He submitted a memorandum incorporating his Amended Complaint, select medical records from treatment he received while incarcerated at Bertie, grievance records, and an affidavit of fellow inmate Charles Elliott. Plaintiff, however, did not submit his own affidavit or any other statement made under penalty of perjury. [Id.]. Thus, in terms of relevant evidentiary forecast, the Defendants' is essentially unrefuted except for the Affidavit of Charles Elliott.[3]

After Plaintiff responded to Defendants' summary judgment motion, he moved for "entry of default pursuant to Federal Rule of Civil Procedure 60(b)" for "failure to file a valid claim and answer within the time allowed by law."[4] [Doc. 62].

This matter is now ripe for adjudication.

---

[3] Plaintiff, in his response, also asks to be allowed to conduct additional discovery, including obtaining witness statements from two inmates who remain incarcerated. Plaintiff also asks the Court to order Defendants "to produce all of the discovery in their possession," "to gather video footage" and to produce the correct Brown Creek shift narratives from April 19, 2016 to June 10, 2016. [Doc. 60 at 3-4]. To the extent Plaintiff's request can be construed as a motion to compel, which is improper in a response, it is denied. The discovery deadline in this case expired on December 21, 2020. [11/23/2020 Text Order]. Moreover, Plaintiff was appointed discovery counsel in this matter and has not shown grounds for the requested relief in any event.

[4] The Court will deny this motion as meritless. Rule 55 governs entry of default, not Rule 60. Moreover, Defendants timely answered Plaintiff's Complaint.

5

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to

"depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

7

> Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The relevant forecast of evidence in the light most favorable to Plaintiff is as follows.

Plaintiff was a prisoner of the State of North Carolina and incarcerated at Brown Creek at the relevant times. He was released from custody on June 11, 2020.[5] [Doc. 58-2]. At the time of incident, Defendant Teresa Willoughby was employed by the North Carolina Department of Public Safety (NCDPS) and was working as a Correctional Lieutenant at Brown Creek, which is now known as Anson Correctional Institution. [Doc. 58-5 at ¶ 2:

---

[5] It appears, however, from the NCDPS offender search website that Plaintiff is again in custody of the State of North Carolina and is currently incarcerated at Craven Correctional Institution in Vanceboro, North Carolina. Plaintiff has not notified the Court of his new address.

8

Willoughby Aff.]. As a Correctional Lieutenant, Defendant Willoughby conducted institutional searches, facility inspections, staff discipline, equipment and tool checks, and shift line-ups. [Doc. 58-5 at ¶ 4]. Defendant Willoughby did not supervise inmates, including Plaintiff, performing their work assignments. [Doc. 58-5 at ¶ 6].

Defendant Jamillah Myers was an NCDPS employee working as a Sergeant at Brown Creek at the relevant times. [Doc. 58-6 at ¶ 4]. As a Sergeant, Defendant Myers supervised subordinate staff, ensuring they were physically and mentally prepared for duty. [Id.]. Defendant Myers also informed staff of any policy changes, resolved day-to-day staff issues, provided crisis intervention, investigated staff discipline issues, managed time sheets, and inspected equipment. Defendant Myers did not work on the housing units and did not have much direct contact with inmates. [Id.].

Defendant Willoughby does not remember Plaintiff specifically. She does, however, recall an inmate in a housing unit approaching her on crutches asking her if he had to work. Defendant Willoughby responded, "No, how are you going to work on crutches?" The inmate replied, "They said if I don't work, I will be written up." Defendant Willoughby told this inmate that he would not be written up and that he did not have to work. Defendant Willoughby does not know whether this inmate was Plaintiff or another

9

inmate. Willoughby has had no other conversations with inmates on crutches asking whether they had to perform a work assignment.[6] [Doc. 58-5 at ¶ 5]. Defendant Myers, on the other hand, never had any interactions with Plaintiff regarding his work assignments or medical issues. [Doc. 58-6 at ¶ 5]. In fact, Defendant Myers did not learn of Plaintiff's medical issues until this action was filed. [Id. at ¶ 7]. Plaintiff has offered no admissible evidence to the contrary.

Generally, at Brown Creek, inmates were excused from work assignments if the inmate had a note from medical staff excusing him from work, the inmate had an injury or some type of illness that would prevent him from performing his job duties, or the inmate voiced that he did not feel well enough to perform his duties. [Doc. 58-5 at ¶ 7]. Inmates were also excused from work assignment if they were away from the institution, had a visitor, or a court appearance. [Doc. 58-6 at ¶ 6].

Defendants Willoughby and Myers were not personally involved in assigning work to inmates or in decisions regarding whether to relieve an inmate from a work assignment. [Doc. 58-5 at ¶ 8; Doc. 58-6 at ¶ 8].

---

[6] Fellow inmate, Charles Elliott, attests that "one day" he saw Plaintiff speaking with Defendant Willoughby and asked Plaintiff afterwards what was said. Plaintiff told Elliott that Defendant Willoughby said that she "couldn't do anything without a medical screening and consent" and that Plaintiff "should get friends to help him clean the bathroom in the meantime." [Doc. 61 at 1]. What Plaintiff said to Elliott, however, would not be admissible as self-serving hearsay.

Notwithstanding Plaintiff's allegation, he presented no forecast of evidence to show that Defendants threatened to write up the Plaintiff if he were to quit a work assignment or that they would threaten to write up an inmate who could not perform a work assignment because of a medical issue. [Doc. 58-5 at ¶¶ 9-10; Doc. 58-6 at ¶ 9-10]. The undisputed forecast is that Defendants Willoughby and Myers would not have required an inmate on crutches or who had a severe knee injury to perform bathroom janitorial duties, which included sweeping, mopping, and sanitizing the bathroom area. [Doc. 58-5 at ¶ 11; Doc. 58-6 at ¶ 11].

## IV. DISCUSSION

### A. Sovereign Immunity

A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, Defendants are entitled to summary judgment on Plaintiff's official capacity claim.

## B. Deliberate Indifference

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's

12

Case 3:19-cv-00187-MR   Document 63   Filed 08/02/21   Page 12 of 16

actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). Farmer, 511 U.S. 825, 837 (1994). A prison official, however, is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Farmer, 511 U.S. at 837.

Plaintiff has not raised a genuine issue for trial here. The forecast of evidence shows that Defendants were not involved in inmate work assignments or decisions regarding whether an inmate should be relieved of such an assignment. The forecast of evidence also shows that inmates were generally allowed medical exemptions from work at Brown Creek.

As to Defendant Willoughby, Plaintiff has failed to establish that she had the requisite state of mind to establish "deliberate indifference" under the law. Deliberate indifference describes a state of mind more blameworthy than negligence, requiring (1) that a defendant have been personally aware of facts from which the inference could be drawn that Plaintiff would suffer a substantial risk of serious harm; and (2) that the defendant had actually drawn the inference and recognized the existence of such a risk. Farmer, 511 U.S. 825, 837 (1994). Further, a prison official is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Id. at 837.

The forecast of evidence in this case fails to satisfy these elements as to Defendant Willoughby's state of mind. Even if the Court were to accept Plaintiff's unverified allegations that Defendant Willoughby told Plaintiff that she "couldn't do anything without a medical screening and consent," such does not give rise to a deliberate indifference claim. The forecast of evidence, however, does not reflect that a medical exemption was unavailable to Plaintiff, that Defendant Willoughby actively required Plaintiff to work while he was injured, or that Defendant Willoughby knew of the scope, duration, or nature of Plaintiff's injury. As such, the forecast of evidence does not show that Defendant Willoughby consciously disregarded

"an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

As to Defendant Myers, Plaintiff has shown even less. The relevant forecast of evidence does not show that Myers had any interactions with Plaintiff regarding Plaintiff's work assignments or medical issues. As such, the forecast of evidence plainly does not support a deliberate indifference claim against Defendant Myers.

As such, Plaintiff has failed to raise a genuine issue of material fact for trial against either Defendant. Summary judgment is, therefore, appropriate.

## C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the

law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because Plaintiff has not forecasted evidence that Defendants violated a constitutional right, Defendants are also entitled qualified immunity on Plaintiff's individual capacity claims. The Court, therefore, grants summary judgment for Defendants on this ground as well.

## V. CONCLUSION

In sum, for the reasons stated herein, the Court grants summary judgment for Defendants Willoughby and Myers.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 57] is **GRANTED** and this action is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's "Request for Entry of Default" [Doc. 62] is **DENIED**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: August 2, 2021

Martin Reidinger
Chief United States District Judge